We're going to move now to case number 3, Appeal 21-3131, Pucillo v. National Credit Systems. And for the appellant first, we'll hear from Mr. Phillips. Thank you, Judge. You're welcome. May it please the Court, Counsel, I'm David Phillips, arguing on behalf of Mr. Pucillo, formerly known as Locke. So the issue here really is, is this closer to Pinnell or is it closer to Persinger, both of which, Judge, you were on those panels. And for Judge Lee, your amusement, and the amusement of the panel, because I argued a case last week in front of Judge Lee, I think I'm suffering from deja vu all over again, to quote the late great Yogi Berra. Now I think we need to put some historic perspective on this. So when this case was pled initially, we were playing on a football field, the goalposts were here. Okay? Since then, not only have the goalposts moved, they've been torn down, and there's soccer nets up. And you can't hold this to the standard of, why are you kicking this football around, this oblong football instead of a soccer? We didn't have guidance from this court in Pinnell, didn't have the guidance from the Supreme Court in Ramirez, didn't have the guidance from this court in Persinger. I submit this is closer to Persinger than Pinnell. And here's why. In Pinnell, which was my case, argued to you over Zoom during COVID, the parties focused on one issue, didn't have anything to do with standing. And summary judgment was decided without any testimony from the consumer. There was nothing supporting the invasion of privacy or why it harmed them or what the effect was. Here, much like Persinger, there is testimony. The defendant chose not to serve any discovery, didn't depose my client, and we, sua sponte, added some stuff about concreteness. We didn't know we were calling it standing then. It was concreteness. We submitted a declaration from Mr. Piccillo, who testified, much like the consumer in Persinger, as to what bothered him. This is an intangible harm, just like Persinger. In Persinger, they didn't pay any money to a debt collector or suffer any out-of-pocket. In fact, they disavowed any actual damages. Much like here, Mr. Piccillo didn't pay any money, but his right to privacy was violated. He didn't use the word right to privacy in the complaint. We didn't know to do that. Every complaint now does. But we did identify a similar right, the fresh start in bankruptcy. And I'm going to see prior counsels, Apollo 13, and raise you a Shawshank Redemption. Okay? My client went through the bankruptcy system, crawled through the financial detritus of his life, and if he did that properly, he's supposed to come out clean the other side. And he didn't come out clean the other side. Here, that collector came knocking, not just once, but twice. And he didn't just come knocking and say, hey, pay us money. He also intimated that somehow they'd marked his credit negatively. What's the injury? The injury is the intangible harm of having his right to privacy, the right to be left alone, invaded. Just like in Persinger. Okay? In Persinger, they grabbed the person's credit report. The right to be left alone, is that injury, in fact, sufficient to confer standing? It does if we're following Persinger, Judge. And if we follow Ramirez v. TransUnion, in Persinger was the right to be left alone. And if you look at the complaint, they're very similar. If you actually look at the district court complaints in Persinger and in this case, okay, they both said, in fact, they both were bankruptcy cases. Persinger, the consumer, went bankrupt, and yet a debt collector then pulled their credit reports to do some collection activities. And that violated the right. That's different than what happened here. That didn't happen here, right? Well, I think it's the same thing but different, because they brought that under the FCRA. So they said it's an impermissible pull. It was a soft pull. It doesn't damage your credit report. It just gives this debt collector your information. Same sort of thing here, okay? They knocked on the door and said, your credit's marked, or might be marked. Pay us this debt. The fact that the client didn't take the bait and pay the debt, well, that would have put us in the tangible harm part. But there's two parts, as Judge Brennan's opinion for the panel in Persinger, well... Shouldn't a debt collector be able to ask for debt to be repaid? I mean, shouldn't the debt collector be able to send a letter that says, you owe this debt and we're asking you to repay it? Sure, absolutely. But not when the debt doesn't exist anymore. And in that fact, that distinguishes this case from most of the other cases. So there was a big waft of cases that came out saying, you lose, you lose, you lose, you lose, you lose. And they were all based on fact patterns where debt collector sent out a letter, the debt was owed in some form or another, and the consumer said, ah, I was confused by some language in there. So the difference here is the bankruptcy court. And the bankruptcy, the discharge of bankruptcy basically confers standing, because the bankruptcy court created a right to be left alone from the credit agency. And therefore, the credit agency violated the right to be left alone when they sent in the letter because the debt no longer existed. Right. The same thing in Persinger. The bankruptcy let that consumer have the right to be left alone. In this case, they have their credit pulled, okay? It's an intangible injury. It doesn't rise necessarily to the full level of invasion of privacy, but as the courts have taught us, it doesn't have to rise to, I could prove an invasion of privacy and win a common law. It's just this part of the claim has to touch on the common law, such as in Ewing versus Med One, this court's opinion where the right that was being violated was a consumer disputed a debt, and the debt collector didn't bother to mark the debt as in dispute. And the panel opinion there, I believe it was Judge St. Eve, held, of course there's standing there because you've effectively defamed the person, okay? You reported something without reporting all the information, okay? And all the information was that the debt was in dispute. So with that in mind, unless you have any other further questions, I'd reserve the rest of my time. Very good. Your time is reserved. Thank you, Mr. Phillips. We'll move Ms. DeMarte to you. Good morning. Katrina DeMarte for NCS, National Credit Systems. May it please the Court, I'd like to just respond to some of Mr. Phillips' comments, since I believe that might be most pertinent to questions you might have. This case, it's not disputed. NCS didn't furnish anything to any consumer reporting agency. There weren't any credit reports that were pulled. I also am unaware of anything that would have required them to have pulled something from a consumer report for any given debtor. And to me, that's an important distinguishing factor from Persinger, which Mr. Phillips does bring up, because there the allegation really was that something was pulled, a credit report was pulled. Here, we don't have that. All we have are the bare allegations that NCS, my client, sent two letters, those were received by the plaintiff, and that caused him some sort of stress and his right to his quote-unquote fresh start. There's nothing more to consider as far as damages are concerned. And as to Mr. Phillips' point that there was a whole slew of cases in 2017, after 2017 when this case was filed, I agree with that. I believe the bulk of them came out around 2020. However, the summary judgment opinion here was issued in 2021, and Mr. Phillips and his client would have had ample time to amend, to include other potential damages if that truly were the case. My understanding of standing and how you would view emotional damages or anything along this line is that they're very easily manufactured, so you would have to have something beyond just saying this letter really stressed me out. So, counsel, can you address the then-Judge Barrett's opinion in Gadalec that it arose under the TCPA, and so it was about getting unwanted text messages, right? And so there was no monetary damage there, and so the defendant argued, well, there's no standing because there's no monetary damage. And then-Judge Barrett goes through the analysis under TransUnion and talks about how the situation there is analogous to a violation of a right to privacy, right? Intrusion upon seclusion, I think, is the term. Can you talk about that case and what relevance, if any, that case has to this one? Certainly, Your Honor. I believe that in that case, and others following Ramirez, there's been an analysis regarding whether or not payment would be necessary to suffice for standing, and there they were talking about the right to privacy, as you noted. To me, I believe that that is also different than the arguments that are being made here. I think it's just slapping the right to privacy label, and what Ramirez really taught us is that something had to have actually impacted you for you to have standing under that. But under Gedelec, there was no monetary damages. It was purely, right? Right. Well, I believe there was eventually monetary damages in Ramirez, but I guess my point to that would be is that there wasn't anything that could have manifested some sort of harm that would be essentially akin to the right to privacy, where here, they filed for bankruptcy, and arguably, then you would have waived any right to privacy regarding this debt because it's included in your bankruptcy petition, and the whole world is out there to be able to see and access that. So I do believe you can have an intangible harm with no payment, but still not have standing, or have standing by virtue of the fact that something actually manifested itself, meaning you did or you didn't take an action. So is it your position that if a person goes through the trouble of going through bankruptcy court, then that person does not have any – should not have any expectation that people would not come after him or her based upon the discharge debts? I think that that is an expectation that one could have, but I don't believe that that would be – And so is that an expectation that would lead to an expectation of privacy or a right to be – not to have your seclusion intruded upon? I don't believe so, and part of that is also just because, like I said, the bankruptcy, everything, it's already public, and usually after you file for bankruptcy, having been a former bankruptcy attorney yourself, you do expect to still receive some letters from people that have filed bankruptcy or even had a discharge, and usually what happens in those instances is that somebody looks to file some sort of a motion for violation of the automatic stay because, as happened here, Main Street Renewal, the underlying creditor, didn't receive notice of the bankruptcy. But that, I think, goes more to the bona fide defense than anything else. And so just focusing on the issue of standing, I guess my question goes to the arguments that Mr. Phillip brought up, which is that if you go through the bankruptcy process, shouldn't you be entitled to some expectation that the debts that you discharge will no longer be the subject of unwanted letters or text messages or communications from those creditors? I think generally, yes, but I think there are exceptions to that, and it really does have to come down to what actually happened in the individual bankruptcy case and what your attorney did to make sure those creditors were on notice. But here, it wasn't, at least based upon the record, there's no factual contest before us as to whether or not this particular debt had been discharged, right? Correct. But also the other thing that I was going to point out, the main issue that I would say that we really have raised on appeal is that there is a difference between factual and facial standing. And so Mr. Phillips did correctly point out that NCS didn't issue discovery here, and standing wouldn't have been NCS's burden to have to prove that. So primarily, you know, the cases that I've seen and I've read, a lot of those go back to, can the case just be dismissed out of the gate? And really here, we were looking at something that would have been more substantive or deeper because we were on summary judgment. And even then, the allegations regarding harm were, they were bare at best. And the other thing I would point out, too, is if you read the declaration that the plaintiff filed here, it says that he reached out to his bankruptcy attorney almost immediately after getting the letters, as it was. His bankruptcy attorney is also one of the attorneys entered as plaintiff's counsel in this case. So to the extent that, you know, there may have been any stress or confusion, I would have serious doubt that that would have been something that would have lingered, much less lingered for the second letter. The other thing I would point out with that, if it's not clear from the record, is there were two communications from NCS. NCS certainly would have ceased communications after the first one, had they been on notice of the bankruptcy. But the second letter was sent after this case was filed, but before NCS received service. So it's not as though they were just sending it to send it. There was a reason why that happened as well. Does the court have any further questions? No. Thank you, Mr. Mark. Mr. Phillips will recognize you now for rebuttal argument. Thank you, Judge. A couple of corrections here. Counsel said the case was filed in 2017. It wasn't. It was filed in 2019. Bankruptcy happened in 2017. Counsel also said that these cases normally handled stay violations. That's just not correct. Okay. Randolph versus IMBS, this court recognized that you could either bring a stay violation or a fair debt claim. And since I won that case, we bring them all as fair debt claims. So that's since 2000. So that's just not correct. Second, or third, counsel said that my client immediately brought these to a bankruptcy attorney and somehow they had to ameliorate the harm. There's nothing in the record that says that. All it says in this declaration is when I received each of these letters, I brought them to the bankruptcy attorney. It doesn't say when or how or after. I think it's even more problematic here that they sent one after they were sued, after they should have known about the bankruptcy, if they'd done their bankruptcy scrub. But we didn't get a decision on the bona fide error yet, whether they should have scrubbed and found the bankruptcy or not. So we don't know how that plays out. But I think if you look at docket 46-1 in the district court, that's the declaration. And it's unrebutted. These letters from national credit system alarmed and upset me and destroyed the fresh start that I had. I mean, that's what cross-examination is for, is to pick that apart. They chose not to ever. They could have asked for a suspension. The summary judge said, hey, we want to depose this guy now on this declaration. They didn't. He also affides unrebutted that he was concerned that this was going to impact his credit score and it was going to take him even longer to rebuild his credit. That's one of the things people want to do when they file bankruptcies, rebuild their credit. So absolutely, his seclusion was intruded upon here. His privacy was violated. Was that phrase used? No. No one knew to put that in there. But they didn't use that in Persinger either. Intrusion upon seclusion. You know, to be frank now, the complaints that are pled usually have an entire two or three pages of standing allegations and common law analogs and things like that. So, Judge, I think this is more like Persinger than Pinnell. We ask that you reverse and remand. Thank you. Thank you, Mr. Phillips. Thank you, Mr. Mark. The case will be taken under advisement.